## Richmond

### MELVIN LANDER BARNETT v. COMMONWEALTH OF VIRGINIA.

September 5, 1975.

Record No. 750101.

Present, All the Justices.

*William P. Robinson, Jr.* (*Mason, Moore & Robinson, Ltd.,* on brief), for plaintiff in error.

*Gilbert W. Haith, Assistant Attorney General* (*Andrew P. Miller, Attorney General,* on brief), for defendant in error.

HARRISON, J., delivered the opinion of the court.

Melvin Lander Barnett was indicted for abduction and rape and, having waived a jury trial, was convicted by the court below and sentenced to serve eight years in the penitentiary for each offense. On this appeal he questions the sufficiency of the evidence to support the convictions.

On June 9, 1974, at approximately 11 p. m., the victim, age seventeen, and her husband, age eighteen, were walking and pushing their bicycles along Argonne Avenue in Norfolk, en route to the home of the husband's mother. At that time a male operating a tan-colored automobile pulled up and asked them for directions to a certain location. A short time later the same car, driven by the same single occupant, returned and stopped approximately a foot or two from the couple. The driver told the victim to get in the car or he would shoot. Neither she nor her husband saw a gun but, as they started to walk on, they heard a "click". Believing this to be the sound of a gun they stopped and the husband told his wife she had better do what the man said. The driver unlocked the rear door of his vehicle, the victim got in, and the car was driven off. About two blocks away, in the same residential section, the driver stopped the car, climbed into the back seat and raped the girl.

Approximately two weeks after the incident the husband saw a tan-colored 1963 Galaxie automobile with a man in it whom he thought was the one who had abducted and raped his wife. This car had its left taillight out, as had the car driven by the man on June 9th. The husband noted the license number of the car and called the police. Thereafter the defendant, Melvin Lander Barnett, age nineteen, was arrested and identified by the victim and her husband as the man who had abducted and raped her.

Upon trial the defendant denied his guilt and attempted by the testimony of various members of his family and friends to establish an alibi for his whereabouts at 11 p. m. on June 9, 1974. The trial court rejected the alibi and concluded that the evidence established the guilt of the defendant beyond a reasonable doubt.

■ The defendant says that proof of identification was not established. We disagree. The place of the abduction was well lighted, and when the defendant stopped his car the second time, his face was within two or three feet of both the victim and her husband. At trial both identified the defendant without any reservation as the person who had abducted and raped the wife. Prior to the trial both had picked defendant's picture out of a group of fourteen photographs as

the picture of the person who had committed the crimes. They made this photographic identification separately and without knowledge on the part of either that the other had made any such identification. At the time of the abduction the husband, although unable to get the license number of the car, did observe defendant's vehicle so closely that he was able to remember the make and model and the missing tail-light. His observation was so accurate that two weeks after the incident in question he recognized the car while it was being driven on the streets of Norfolk. At that time he was able to obtain the vehicle's license number, and this resulted in defendant's arrest. The husband testified positively that the man seen in the car on the subsequent occasion was the same man who had been driving it on the night of the abduction.

■ Defendant also says that the evidence is insufficient to establish the offense of abduction. The evidence of the couple was that the defendant told the wife to get in or he would shoot. When the victim walked away, they heard a "click". The husband said that he thought the man had a gun and told his wife, "you'd better do what he says". The wife testified that she got into defendant's car "[b]ecause, I didn't have any other choice". The defendant's threat to shoot was a sufficient show of force to frighten the victim and to cause her to believe that she would be killed if she did not accede to his demands. Whether the click, which both the girl and her husband heard, was made by a gun or simulated in some other way by defendant is immaterial because both parties thought that it was a gun, and both thought that the defendant was capable of, and had the means of, carrying out his threat to shoot. The evidence was sufficient for the trial court to have found that the victim was abducted by force and against her will.

■ The defendant further claims that the victim did not resist sufficiently for the crime to constitute forcible rape. The law is clear that to sustain a charge of forcible rape there must be evidence of some array or show of force sufficient to overcome resistance. However, the woman is not required to resist to the utmost of her physical strength if she reasonably believes that resistance would be useless and result in serious bodily injury to her. And in this connection the trier of the facts must consider the whole situation as it confronts the victim of such an assault and all of the circumstances disclosed by the evidence. *Poindexter* v. *Commonwealth*, 213 Va. 212, 191 S. E. 2d 200 (1972); *Satterwhite* v. *Commonwealth*, 201 Va. 478, 111 S. E.

2d 820 (1960); *Bradley* v. *Commonwealth*, 196 Va. 1126, 86 S. E. 2d 828 (1955); *Davis* v. *Commonwealth*, 186 Va. 936, 45 S. E. 2d 167 (1947).

In the instant case the victim was abducted on a public street in the nighttime by a threat that she either get in defendant's car with him or he would shoot. Immediately after she got into the vehicle it was placed in motion. She found it impossible to escape for that reason and for the further reason, she testified, that she was still under the belief that he had a weapon and was capable of carrying out his threat to shoot. She testified that as soon as the defendant stopped his car after abducting her he jumped into the back seat on top of her, pushed her down, held her wrists so she could not get her hands free, and ripped off her pants when she would not take them off at his command. The rape then occurred.

The victim said that she tried to get defendant's hands from around her neck but "he kept holding me down with his hand around my throat area", and that he applied pressure on her throat. She said that she never had a chance to escape from the car because immediately after the car stopped defendant jumped in the back seat and put his hand over her mouth. She said that she was too scared to scream, and that she tried to cross her legs but because of his position on top of her she could not move them. She said that she did get one hand free and tried to push defendant off and that he told her, "if I didn't keep still, he'd kill me". The husband testified that immediately after the rape he noticed that his wife's "wrists were red like".

Clearly the trial judge found from the evidence in this case that the victim reasonably believed that resistance beyond that which she offered would have been useless and would have possibly resulted in serious bodily injury to her. It is further noted that in addition to the testimony given by the victim, the evidence shows that she immediately made complaint of the attack and gave information to the police.

The evidence given by the victim of her forcible abduction was fully corroborated by the testimony of her husband. In a rape case it is not necessary for the testimony of the prosecutrix to be corroborated, and her testimony alone is sufficient to sustain a conviction. *Poindexter* v. *Commonwealth, supra; Hammer* v. *Commonwealth*, 207 Va. 159, 148 S.E. 2d 892 (1966). Here, the evidence of the victim is not inherently incredible or so contrary to human experience or to human behavior as to render it unworthy of belief. On the contrary, much of her testimony about both the abduction and the rape is cor-

roborated, and her conduct immediately after the offense is consistent with that of a person who has been criminally assaulted.

The trial court saw and heard the witnesses testify and by its judgment resolved any conflicts in the evidence against the defendant. We must view the testimony in the light most favorable to the Commonwealth, granting all reasonable inferences clearly deducible therefrom. When so viewed we cannot say that the judgment of the lower court is plainly wrong or without evidence to support it.

*Affirmed.*